### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

REBECCA C.,[1]

    *Plaintiff*

    v.

KILOLO KIJAKAZI, ACTING COMMISSIONER
OF SOCIAL SECURITY,

    *Defendant*.

No. 3:21cv1125 (MPS)

## RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

Plaintiff Rebecca C. brings this administrative appeal against the Commissioner of Social Security under 42 U.S.C. § 405(g) challenging the Commissioner's denial of her application for supplemental security income. On appeal, the Plaintiff argues that the Administrative Law Judge ("ALJ") failed to properly (1) assess certain of her impairments at step two; (2) consider her impairments in combination; (3) develop the Administrative Record; and (4) formulate her residual functional capacity. ECF No. 13-2. The defendant Commissioner has filed a motion to affirm the ALJ's decision on the grounds that the decision is supported by substantial evidence and the ALJ did not err. ECF No. 20. For the reasons that follow, I grant the Commissioner's motion and affirm the ALJ's decision.

I assume familiarity with the Plaintiff's medical history, as summarized in the Plaintiff's statement of material facts, ECF No. 19, which the Commissioner incorporates and supplements, ECF No. 20-2, and which I adopt and incorporate by reference.[2] I also assume familiarity with

---

[1] As set forth in Chief Judge Underhill's January 8, 2021 Standing Order, the Plaintiff is identified by her first name and last initial. See Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

[2] The Plaintiff's initial Statement of Material Facts, ECF No. 13-1, did not comply with the Court's order because the facts were not set forth in numbered paragraphs and the Statement exceeded the page limit. ECF No. 4. Eleven days before the defendant Commissioner's brief was due, the Plaintiff filed another Statement of Material Facts. ECF No. 19. But this too failed to conform to the Court's order because - again - the facts were not set forth in numbered

the five sequential steps used in the analysis of disability claims, the ALJ's opinion, and the record.[3]

I cite only those portions of the record and the legal standards necessary to explain this ruling.

## I.      Standard of Review

The Court "may vacate the agency's disability determination only if it is based on legal

error or unsupported by 'substantial evidence' - that is, if no reasonable factfinder could have

reached the same conclusion as the ALJ." *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022).

> The substantial evidence standard is a very deferential standard of review - even
> more so than the clearly erroneous standard.... Substantial evidence is such relevant
> evidence as a reasonable mind might accept as adequate to support a conclusion....
> In determining whether the agency's findings were supported by substantial
> evidence, the reviewing court is required to examine the entire record, including
> contradictory evidence and evidence from which conflicting inferences can be
> drawn.... If evidence is susceptible to more than one rational interpretation, the
> Commissioner's conclusion must be upheld.... The substantial evidence standard
> means once an ALJ finds facts, [the Court] can reject those facts only if a reasonable
> factfinder would have to conclude otherwise.

*Id.* at 74 (internal quotation marks and citations omitted; emphasis in original).  *See also Peter B.*

*v. Kijakazi*, No. 3:20CV966(TOF), 2022 WL 951689, at *7 (D. Conn. Mar. 30, 2022) ("Stated

differently, even where the administrative record may also adequately support contrary findings

on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are

supported by substantial evidence." (internal quotation marks and alteration omitted)).

## II.      ALJ's Decision

The Plaintiff, who was 37 years old as of her alleged onset date of November 7, 2017, filed

for benefits on the grounds that she was unable to work due to post-traumatic stress disorder

("PTSD") and obesity.  R. 15, 474, 480.  The ALJ found that the Plaintiff has severe impairments

---

paragraphs and at 25 pages, it exceeded the limit of 20 pages.  In addition and more substantively, as noted in the
Commissioner's response, ECF No. 20-2, many of the Plaintiff's citations to the administrative record were incorrect.
[3] Citations to the administrative record, ECF No. 8, appear as "R" followed by the page number appearing on the
bottom right hand corner of the record.

of major depressive disorder, generalized anxiety disorder, PTSD, gender dysphoria, autism spectrum disorder, and borderline personality disorder.  R. 18.  The ALJ further found that the Plaintiff had non-severe impairments of status-post gastric bypass sleeve, obesity, kidney stones, and a cannabis use disorder.  *Id.*  The ALJ next concluded that the Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the "Listings" – that is, the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*  As to this factor, the ALJ specifically considered whether the Plaintiff's mental impairments met or equaled the criteria of listings 12.04 (depressive, bipolar, and related disorders) and/or 12.06 (anxiety and obsessive-compulsive disorders).  R. 19-20.  The ALJ determined that the Plaintiff retained the residual functional capacity ("RFC")[4]

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is capable of performing simple, routine tasks in an environment requiring no more than occasional interaction with coworkers and incidental contact with the general public.  The claimant cannot perform tandem tasks.  The claimant can accept occasional changes to a routine work setting.

R. 21.  The ALJ found that the Plaintiff was unable to perform her past relevant work as a pharmacy technician and customer service representative. R. 29.  After consideration of the Plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert, the ALJ determined that there are a significant number of jobs in the national economy that the Plaintiff could perform, such as laundry laborer, dishwasher, and equipment washer.  R. 30.  Accordingly, the ALJ found that the Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of November 7, 2017 through February 2, 2021, the date of the decision.  R. 31.

---

[4] The RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1).  The ALJ assesses the RFC "based on all of the relevant medical and other evidence." *Id.*

### III.    Discussion

### A.    The ALJ's Step Two findings

The Plaintiff first argues that the ALJ's findings at step two that the Plaintiff's impairments of status-post gastric bypass sleeve, obesity, kidney stones, and cannabis use disorder were non-severe are unsupported by substantial evidence.  ECF No. 13-2 at 2.

"At the second step of the disability evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment that is 'severe' or a combination of impairments that is 'severe.'"  *Quiles v. Colvin,* No. 3:13CV1905(WIG), 2015 WL 13729877, at *11 (D. Conn. Jan. 28, 2015).  *See* 20 C.F.R. § 416.920(c).  A severe impairment is "any impairment or combination of impairments which significantly limits [a plaintiff's] physical or mental ability to do basic work."  *Woodmancy v. Colvin,* 577 F. App'x 72, 74 (2d Cir. 2014).  "The mere presence of an impairment, or that a person has been diagnosed and/or treated for an impairment is not, by itself, sufficient to render a condition severe."  *Ronald S. v. Comm'r of Soc. Sec.*, No. 1:20CV1688, 2022 WL 3716568, at *11 (W.D.N.Y. Aug. 29, 2022).  "A claimant has the burden of establishing that she has a 'severe impairment.'"  *Woodmancy*, 577 F. App'x at 74. *See Britt v. Astrue*, 486 F. App'x 161, 163 (2d Cir. 2012) (holding that plaintiff's argument that ALJ should have found certain impairments severe was "without merit" when the plaintiff "did not furnish the ALJ with any medical evidence showing how the[] alleged impairments limited his ability to work.")

The Plaintiff asserts that the ALJ's step two "analysis consists of the ALJ indicating that the impairment are not severe, and then a cherry-picking of the record and supplanting her own opinions for that of Doctors and clinical evidence in the file."  ECF No. 13-2 at 2-3.  As a preliminary matter, the Court observes that this argument – and all the Plaintiff's claims for that

matter - are wholly conclusory.  The Plaintiff fails to cite *any* record evidence in support of the arguments she asserts in this action.  *See Johnson v. Colvin*, No. 13CV6319, 2014 WL 1394365, at *6 (W.D.N.Y. Apr. 9, 2014) ("Since Plaintiff is represented by counsel, the Court presumes that if evidence in support of the memorandum's conclusory arguments were to be found, counsel would have cited to it. The Court is not required to comb the record in search of evidence in support of Plaintiff's position.").  Notwithstanding this failure, the Court has carefully reviewed the administrative record and concludes that substantial evidence supports the ALJ's findings.

1.      <u>Status-post gastric sleeve bypass and obesity</u>

The ALJ noted that the Plaintiff's BMI was indicative of obesity, and that various records list obesity as a diagnosis. R. 18-19, 1106, 1394.  At the time of the Plaintiff's elective laparoscopic sleeve gastrectomy in September 2018, she weighed 282 pounds and at 5'9", had a BMI of 40.46. R. 1107, 1175.  As the ALJ acknowledged, the Plaintiff experienced pain and nausea for a period of time after the surgery.  R. 18.  The record indicates that the Plaintiff went to the Waterbury Hospital emergency department on multiple occasions in the two months following the surgery with complaints of abdominal pain, nausea, and vomiting.  *See* 9/15/18 note indicating abdominal pain complaint and determining that the Plaintiff was suffering from dehydration (R. 1623); 9/22/18 note of "flank pain" (R. 1891); 9/26/18 note indicating complaint of abdominal pain (R. 1955-56); 10/13/18 note of complaints of vomiting (R. 1400-01); 10/22/18 note stating complaint of abdominal pain and indicating that medical staff had "[c]oncerns for drug dependency/drug seeking behavior" and had concluded that there was "absolutely no indication for opioid therapy today" (R. 2049); 10/25/18 note of abdominal pain complaint, but stating that the Plaintiff was "not in distress, [was] talking with family and appear[ed] comfortable." (R. 2103, 2576, 2618)). Repeat CT scans reflected benign findings.  R. 1953, 1966.  About two months after her procedure,

the record reflects that the trips to the emergency room and the underlying complaints abated. There is no evidence of any on-going treatment. By September 3, 2019, the Plaintiff weighed 205 pounds and her BMI was 30.3.  R. 2695.  The ALJ noted the Plaintiff's history of obesity, but observed that there was no evidence in the record of any complications stemming from this condition nor of any impact on the Plaintiff's ability to perform work-related activity.  R. 19.

The Plaintiff does not point to, nor does the Court's review of the record reveal, any record evidence indicating that the Plaintiff's impairments of status-post gastric sleeve procedure or obesity impose, either singly or in combination, a significant limitation on her ability to perform work-related activities. The ALJ's findings that these impairments are non-severe are supported by substantial evidence.

2.    Kidney Stones

As the ALJ noted, in August 2018, the Plaintiff presented to the emergency room with rightsided abdominal pain and hematuria.  R. 19, 844.  A CT scan revealed mild hydronephrosis[5] and hydroureter[6] on the right, due to a 3 mm stone in the distal right ureter.  R. 848.  The Plaintiff returned to the emergency room approximately a week later, complaining of right flank pain.  R. 916.  Medical records indicate that the kidney stone "likely passed at the time of [her] admission." R. 952.  A CT scan confirmed that the "[p]reviously seen obstructing calculus within the distal right ureter [was] no longer visualized."  R. 953. The Plaintiff was treated and released.  R. 954. The records do not indicate any other incidents or further treatment.  Nor does the record indicate that Plaintiff's kidney stones significantly limited her capacity to perform any basic work activities.

[5] Hydronephrosis is swelling of one or both kidneys.
https://www.mayoclinic.org/diseases-conditions/hydronephrosis/cdc-397563#:~:text=Hydronephrosis%20is%20swelling%20of%20one,allow%20urine%20to%20drain%20properly.
[6] Hydroureter is when the ureter gets bigger than normal due to a backup of urine.
https://www.nationwidechildrens.org/conditions/hydroureter#:~:text=What%20is%20Hydroureter%3F,be%20the%20only%20condition%20present.

Substantial evidence supports the ALJ's finding that the Plaintiff's kidney stones impairment was not a severe impairment.

3.    Cannabis use disorder

The ALJ noted that the medical evidence reflected that the Plaintiff reported regular marijuana use during 2017 and 2018 and intermittent use thereafter.  R. 19.  The record reflects, and the ALJ found, that cannabis use was not the focus of medical treatment and that the Plaintiff's therapist had not recommended substance abuse treatment.  *Id.  See* R. 2220 (therapist stating that Plaintiff's cannabis use was not being addressed in treatment as a problematic behavior.)  The Court's own review of the record indicates that although the Plaintiff's use was documented in medical records, there is no evidence as to its impact on her functional abilities.[7]  Substantial evidence supports the ALJ's finding that the Plaintiff's cannabis use disorder does not result in more than a minimal limitation of her functionality.

* * *

The Plaintiff has failed to present sufficient evidence to demonstrate that her impairments of status-post gastric bypass sleeve, obesity, kidney stones, and cannabis use disorder – either singly or in combination – significantly interfered with her ability to perform basic work activities. The Plaintiff has not shouldered her burden of demonstrating that any of these impairments are severe; as a result, remand on this basis is not warranted.  *See Barnaby v. Comm'r of Soc. Sec.*, No. 817CV0399, 2018 WL 4522057, at *5 (N.D.N.Y. June 6, 2018) (Plaintiff's argument that his headaches were a severe impairment failed where "he provide[d] no evidence in the record to support his conclusory assertion.");  *Schneider v. Colvin*, No. 3:13CV790(MPS), 2014 WL 4269083, at *9 (D. Conn. Aug. 29, 2014) ("A step two error is not reversible and does not

---

[7] As noted, the Plaintiff's brief fails to cite any evidence in the record in support of this argument.  Her Statement of Material Facts also is bereft of any citations to any evidence in support of this claim.  See ECF No. 19.

necessitate remand where the record is devoid of evidence that the allegedly omitted impairments were severe.").

**B.      Combination of Plaintiff's impairments**

The Plaintiff next argues that the ALJ "failed to evaluate [the Plaintiff's] obesity, anxiety, and gender dysphoria in the context of the combination of impairments." R. 13-2 at 5.  She claims that her "obesity and related conditions (gastric sleeve failure[8], nausea, vomiting etc.) play a pivotal role in preventing and adding huge amounts of stress to the Transitioning[9] process." *Id.* According to the Plaintiff, "it is near impossible to ignore the way [her] obesity interacts with her other physical ailments and psychiatric state . . . ." *Id.* at 6.

Insofar as the Plaintiff argues that the ALJ erred in not finding that the Plaintiff's obesity was a severe impairment based on its combined effect on other impairments, that argument fails. The Plaintiff (again) cites no evidence showing how her obesity, alone or in combination with other impairments, increased the severity or functional limitations of any other impairment, nor does the Court's own independent review of the record reveal any.

To the extent that the Plaintiff argues that the ALJ erred by not discussing Plaintiff's obesity beyond step two, this argument also fails. "[W]here the record contains evidence indicating limitation of function due to obesity, the ALJ must consider the effect of obesity on the claimant's ability to do basic work activities at steps two through four of the sequential evaluation process." *Browne v. Comm'r of Soc. Sec.*, 131 F. Supp. 3d 89, 102 (S.D.N.Y. 2015) (quoting *Battle v. Colvin*, 2014 WL 5089502, at *5 (W.D.N.Y. Oct. 9, 2014)). "Conversely, the ALJ's obligation to discuss a claimant's obesity alone, or in combination with other impairments, diminishes where evidence in the record indicates the claimant's treating or examining sources did not consider obesity as a

---

[8] I could find no references in the record indicating that the Plaintiff's gastric sleeve surgery was a "failure."
[9] The Plaintiff is a male to female transgender individual.  R. 2999.

significant factor in relation to the claimant's ability to perform work related activities." *Id.* (quoting *Farnham v. Astrue*, 832 F. Supp. 2d 243, 261 (W.D.N.Y. 2011)).  Here, as noted, various health records note the Plaintiff's weight, but there is no evidence in the record indicating that obesity limited the Plaintiff's ability to work. *See Mancuso v. Astrue*, 361 F. App'x 176, 178 (2d Cir. 2010) (ALJ did not err in review of obesity where "there [was] no factual basis for thinking that 'any additional and cumulative effects of obesity' limited [the claimant's] ability to perform light work") (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00Q).

**C.     Development of the Record**

The Plaintiff argues that the ALJ did not adequately develop the record.  ECF No. 13-2 at 7.

An ALJ has an affirmative duty to develop the record "in light of 'the essentially non-adversarial nature of a benefits proceeding.'" *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996).  "The ALJ's duty to develop the record is not, however, unlimited." *Martinez v. Saul*, No. 3:19CV1017(TOF), 2020 WL 6440950, at *4 (D. Conn. Nov. 3, 2020).  "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history the ALJ is under no obligation to seek additional information." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999).  *See also Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (summary order) ("The ALJ is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability.").

The Plaintiff has not identified a gap in the record nor does she contend that the ALJ lacked the Plaintiff's complete medical history.[10]  *See Lopez v. Berryhill*, 448 F. Supp. 3d 328, 343 n.2

---

[10]Earlier the case was remanded by the Appeals Council because certain underlying therapy records were missing.  R. 215-16.  Those records subsequently were obtained and added to the record.  R. 3014-3091.  The Plaintiff concedes that the records were part of the record before the ALJ.  ECF No. 13-2 at 11.  Notably, the ALJ considered and referred to them several times in the decision. *See* R. 26-27.

(S.D.N.Y. 2020) (rejecting Plaintiff's argument that ALJ failed to develop record where Plaintiff did not point to any gaps in the record). On the contrary, the Plaintiff acknowledges that the record contains "countless" evaluations and records of her "steady treatment for gender dysphoria, depression, anxiety and PTSD."  ECF No. 13-2 at 8. Indeed, spanning more than 2500 pages of medical evidence, the record before the ALJ was breathtakingly comprehensive and included: (1) psychotherapy notes from her therapist, Ms. Summers from 9/5/17 to 3/13/19 (R. 3014-3091); (2) a mental impairment questionnaire dated 6/28/18 completed by Ms. Summers (R. 2973-2993); (3) three letters from Ms. Summers (R. 2220, 2999, 3001); (4) an August 2020 neuropsychological evaluation (R. 2969-2972); (5) a mental impairment questionnaire and treatment notes by APRN Moscowitz (R. 2958 - 2963); (6) a mental impairment questionnaire and treatment notes from Dayne Bachman, LCSW, from 4/16/19 to 6/22/20 (R. 2791-2823); (7) hospital records from the Plaintiff's inpatient hospitalization from 8/2/18 to 8/8/18 (R. 2221-2241); and (8) treatment notes from the Wheeler Clinic from 1/17/18 to 3/14/18. (R. 633-657).

The administrative record was "adequate for [the ALJ] to make a determination as to disability," *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996), and the Plaintiff does not argue otherwise.  Rather, the Plaintiff appears to claim that the ALJ misweighed the evidence.  ECF No. 13-2 at 8 (The ALJ "takes the unreasonable, untenable and error-filled position that the plaintiff's mental condition is not severe enough to cause more than slight limitations.")  But that is not grounds to show that the record was inadequate to permit the ALJ to determine the Plaintiff's RFC. The ALJ did not err in failing to develop the record as to the Plaintiff's mental capacity.[11]

---

[11]As to the Plaintiff's physical capacity, the Plaintiff asserts, without more, that "if the [ALJ] believed that there was insufficient information regarding the nature and extent of the plaintiff's physical condition, it was the duty of the ALJ and the Commission[er] to further develop the record." ECF No. 13-2 at 9. Here again, the Plaintiff does not articulate what information is missing from the record or why the record was inadequate for the ALJ to determine her RFC. Nor does the Court's review of the record indicate that any obvious gap existed.  Remand is not warranted on this ground.

**D.**      **The ALJ's Evaluation of Opinion Evidence**

In her final argument, the Plaintiff asserts that the ALJ's RFC finding is not supported by substantial evidence.  ECF No. 13-2 at 10.  In support, she contends that the opinion and records of her therapist, Ms. Summers, "as well as the opinions from other mental health providers were marginalized, brushed aside, and not given further consideration[.]"  *Id.* at 11-12.  This is the extent of her argument.  Insofar as the Plaintiff argues that the ALJ erred in his consideration of the opinion evidence of the Plaintiff's mental health providers, I disagree.

An ALJ assesses a plaintiff's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3). "In deciding a disability claim, an ALJ is tasked with 'weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'" *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 256-57 (W.D.N.Y. 2018) (alterations in original) (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)). For claims filed after March 27, 2017, such as this one, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion[s]." 20 C.F.R. § 416.920c(a). Instead, "the ALJ will consider a series of factors, including, *inter alia*, supportability, consistency, relationship to the claimant, and specialization when evaluating a medical opinion." *Colgan v. Kijakazi*, 22 F.4th 353, 359 n.2 (2d Cir. 2022); *see* 20 C.F.R. § 416.920c(c). Supportability and consistency are "the most important factors" an ALJ considers when determining how persuasive he finds a medical source's medical opinions, and the ALJ must explain how he considered these factors. 20 C.F.R. § 416.920c(b)(2). "The ALJ may - but is not required to - explain how he considered the remaining factors.... However, when the opinions offered by two or more medical sources about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same, the ALJ will articulate how he

considered the remaining factors in evaluating the opinions." *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021) (quotation marks and citations omitted). *See* 20 C.F.R. § 416.920c(b)(3). With respect to the supportability factor, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Jackson v. Kijakazi*, No. 20CV7476(JLC), 2022 WL 620046, at *12 (S.D.N.Y. Mar. 3, 2022). Consistency "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.*

1.    <u>LCSW Sandra Summers</u>

Sandra Summers, LCSW, the Plaintiff's therapist, completed a medical statement dated June 28, 2018 regarding the Plaintiff's mental ability to do work-related activities. R. 2975-79. She indicated that she saw the Plaintiff on a "biweekly to monthly" basis from August 2017 to June 2018. R. 2975. Ms. Summers listed the Plaintiff's diagnoses as borderline personality disorder, gender dysphoria, and chronic PTSD. *Id.* Ms. Summers stated that the Plaintiff was "resistant to trauma work, ego syntonic due to lack of insight, [] extremely entitled and guarded due to her [history] of provider traumas." *Id.* She described the Plaintiff's thought content as "normal most of the time, however [she] can be obsessive about rights, feeling she is treated unfairly and discriminated against." R. 2976. According to Ms. Summers's statement, the Plaintiff's mood was depressive and anxious, and her judgment was "poor/impaired." *Id.* On a scale from "no ability" to "never a problem," Ms. Summers opined that the Plaintiff had "[n]o ability" as to the majority of functional areas assessed such as interacting appropriately with others, asking questions or requesting assistance, and carrying out single-step instructions. R. 2977-78.

The ALJ concluded that Ms. Summers's opinion was not persuasive. R. 26-27. In evaluating the persuasiveness of Ms. Summers's opinion, the ALJ properly explained his

consideration of the supportability and consistency factors as required by 20 C.F.R. § 416.920c(b)(2). The ALJ specifically explained that Ms. Summers's opinion was internally inconsistent, noting, as an example, that she indicated that the Plaintiff was capable of completing cognitive testing measures (serial 3's, counting backwards) yet opined that the Plaintiff had no ability in terms of task completion. R. 27; R. 2976. The ALJ further observed that the degree of limitations Ms. Summers ascribed to the Plaintiff was not fully supported by her treatment notes. R. 26-27. In her treatment notes, Ms. Summers consistently described the Plaintiff as oriented, with anxious mood, intact functional status, and appropriate affect. *See, e.g.,* R. 3042 (5/19/18 note); R. 3050 (6/30/18 note); R. 3052 (7/11/18 note); R. 3056 (8/1/18 note); R. 3058 (8/10/18 note); R. 3066 (9/14/18 note); R. 3074 (10/31/18 note). In addition, the ALJ observed that Ms. Summers authored a letter in support of the Plaintiff's surgery in which she opined that the Plaintiff was "mentally competent," "reasonably well-controlled with mental health symptoms" and "quite stable." R. 27, 2999. In an October 9, 2017 letter in support of the Plaintiff's feminizing facial surgery, Ms. Summers stated that the Plaintiff's PTSD was in response to stressors from her gender transition from male to female and more recent situations in which she was assaulted due to not passing as female. R. 2999. Ms. Summers reported that the Plaintiff "seems very happy in her transition but will clinically benefit from being able to 'pass' with the support of surgical procedures indicated for the facial feminization surgery. She has a strong support system . . . . She has a steady treatment program. Her judgment appears sound and good." *Id.* In a July 2018 letter in support of the Plaintiff's weight loss surgery, Ms. Summers wrote that the Plaintiff had "made significant progress in addressing healthy communication with assertiveness and mindfulness within" her therapeutic relationship. R. 3001. Ms. Summers further stated that the Plaintiff was "emotionally and mentally ready to continue the next steps of this weight loss surgery." R. 29, 3001. Further,

Ms. Summers cleared the Plaintiff from a psychological standpoint, stating she had "no hesitation in recommending [Plaintiff] for the procedure." R. 3001. In a December 26, 2018 letter, Ms. Summers explained that the Plaintiff's treatment goals were "to work on improving communication within her family system," to lose weight, and to decrease anxiety symptoms by "learning at least one healthy communication skill." R. 2220.

The record contains other evidence that is not consistent with, and does not support, the degree of severity opined by Ms. Summers. In August 2018, the Plaintiff was hospitalized for a brief period after suicidal ideation.[12] R. 2306. She stated she was upset that the State of Connecticut would not provide her with gastric sleeve surgery - and subsequently gender reassignment surgery - because she must be "clean of drugs for one year," which was an issue because she is a cannabis smoker. *Id.* After a few days, her mood was less depressed and anxious, and she was assessed as "pleasant and engageable, participating in group process." R. 2417. Notes indicate that she was "positive" and "feeling well." *Id.* She was described as calm, cooperative, with a clear and organized thought process, easy to engage and able to respond appropriately to questions. R. 2419. Her memory, attention span, and concentration were "intact." R. 2424. At discharge on August 8, 2018, she was "future oriented." R. 2240. She was noted to be "social with peers and medication compliant" with "good behavioral control." *Id.* When seen on August 16, 2018, she told her primary care physician, Dr. Demidont, that she "feels like she had a breakthrough and wants to get on track with that." R. 2248. Dr. Demidont assessed her as alert, oriented, calm, and cooperative and noted that she answered questions appropriately. *Id.* The ALJ appropriately analyzed the supportability and consistency of Ms. Summers's opinion and his assessment of Ms. Summers's opinion was supported by substantial evidence.

---

[12] The Plaintiff does not refer to these clearly pertinent records in her Statement of Material Facts. R. 19.

2.    LCSW Dayne Backmann

On June 22, 2020, Dayne Bachmann, LCSW, completed a Mental Impairment Questionnaire.  R. 2791-2796.  He indicated that he saw the Plaintiff on a biweekly basis from April 2019 to August 2019, and then again from November 2019 to February 2020.  R. 2791.  Mr. Bachmann diagnosed the Plaintiff with gender dysphoria and PTSD.  *Id.*  He assessed her as having fair insight, judgment and thought content, low mood, and blunt affect.  R. 2791. She was oriented and cooperative but had a disheveled appearance.  *Id.*  He opined that the Plaintiff had an "unlimited" ability to carry out very short and simple instructions, and a "limited but satisfactory" ability to perform the majority of tasks listed including the ability to remember work-like procedures, understand and remember very short and simple instructions, maintain attention for two-hour segments, maintain regular attendance and be punctual, and sustain an ordinary routine without special supervision.  R. 2793.  Mr. Bachmann assessed the Plaintiff as "seriously limited"[13] in the ability to: complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, deal with normal work stress, be aware of normal hazards and take appropriate precautions.  *Id.*  Mr. Bachmann opined that the Plaintiff had "marked limitations"[14] in understanding, remembering, and/or applying information, interacting with others, concentrating, persisting, maintaining pace, adapting in the workplace, and managing oneself in

---

[13] "Seriously limited means [the] patient has noticeable difficulty . . . from 11 to 15 percent of the workday or work week."  R. 2793.
[14] "Marked means the ability to function independently, appropriately, effectively and on a sustained basis is seriously limited."  R. 2795.

the workplace.  R. 2795.  He further opined that as a result of her impairments, the Plaintiff would be absent from work more than four days per month.  R. 2796.

The ALJ found Mr. Bachmann's opinion was not persuasive.  R. 28.  In so concluding, the ALJ observed that the opinion was internally inconsistent and not supported by Mr. Bachman's treatment records.  *Id.*  The ALJ noted, as an example, that Mr. Bachmann opined that the Plaintiff had a limited but satisfactory ability to carry out detailed instructions yet he assessed her with "marked limitation" as to concentration, persistence or pace. R. 28.  Moreover, the degree of limitations assessed by Mr. Bachmann were not supported by his treatment notes, which did not reflect such debilitating issues or that the Plaintiff was so compromised.  Treatment notes reflect that the Plaintiff complained of boredom and financial concerns (R. 2801, 2807), health issues (R. 2803) and marital issues (R. 2810, 2812, 2813, 2816, 2817, 2818). Several of Mr. Bachmann's notes described the Plaintiff as "open and engaged."  R. 2802, 2803, 2807.  A mental status exam indicated normal appearance, good insight and judgment, intact memory, good attention, euthymic mood, and normal perception, thought content, and thought process. R. 2800.  In a September 5, 2019 letter in support of the Plaintiff's breast augmentation surgery, Mr. Bachmann stated that the Plaintiff has an "excellent understanding" of the risks and benefits of the surgery and "is capable of making an informed decision about undertaking surgery." R. 2699.  He opined that the surgery would be the "next appropriate step" for her and that this would "help her make significant progress in further treating her gender dysphoria."  *Id.*  The ALJ appropriately analyzed the supportability and consistency of Mr. Bachmann's opinion and his assessment of Mr. Bachmann's opinion was supported by substantial evidence.

3.    APRN Katrin Moskowitz

The ALJ also had before him a July 10, 2020 mental impairment questionnaire from APRN

Moscowitz.  R. 2958 - 2963.  APRN Moscowitz indicated that she had seen the Plaintiff on three occasions in 2020.  R. 2958.  She stated that the Plaintiff's diagnoses were "PTSD" and "Transgendered."  *Id*.  APRN Moscowitz assessed the Plaintiff as "stable on medications" but that she should be evaluated to rule out autism.  *Id.*  APRN Moscowitz opined that the Plaintiff had an "unlimited ability" to:  understand and remember very short and simple instructions, work in coordination with or proximity to others without being unduly distracted, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and be aware of normal hazards and take appropriate precautions.  R. 2960.  According to APRN Moscowitz, the Plaintiff had "[n]o useful ability to function"[15] as to the ability to maintain attention for two-hour segment and complete a normal workday and workweek without interruptions from psychologically based symptoms, interact appropriately with the general public, and use public transportation.  R. 2960-61. She further assessed the Plaintiff with moderate[16] limitations in the area of understanding, remembering, and applying information, interacting with others, concentrating, persisting, and maintaining pace, adapting in the workplace, and managing oneself in the workplace.  R. 2962.  Finally, she opined that the Plaintiff would be absent more than four days a month as a result of her impairments.  R. 2963.

The ALJ found that APRN Moscowitz's opinion was not wholly persuasive.  R. 28.  He explained that the severity of limitations she found was not consistent with her treatment records. *Id.* For example, the ALJ observed that APRN Moscowitz's mental status examination findings indicated that the Plaintiff had normal speech, appropriate mood and affect, logical and relevant thought process, normal thought content, and realistic judgment.  R. 28, 2964, 2967.  Her treatment

---

[15] No useful ability to function is "an extreme limitation [and] means [the] patient cannot perform this activity on a regular, reliable and sustained scheduled in a regular work setting."  R. 2960.
[16] "Moderate means the ability to function independently, appropriately, effectively, and on a sustained basis is fair." R. 2962.

notes stated that the Plaintiff also had normal insight, memory, attention span, and concentration ability. R. 2964, 2967.  Notes also indicate that the Plaintiff had "rigid thoughts at times" and "[h]yperanalyz[ed] conversations" and that she wished to be evaluated for autism.  R. 2965.  The ALJ noted that although the Plaintiff had limitations related to her abilities to manage stress and interact with others, the record indicated that she was able to perform the activities of daily living, advocate for her own needs, attend treatment, utilize public transportation, complete tasks that are of interest to her, and engage in volunteer work, all of which support greater abilities than those opined by Ms. Moscowitz.  R. 28.  Substantial evidence supports these findings.  *See* R. 93 (Plaintiff testified at the hearing that she uses public transportation); R. 2242 (Plaintiff stated that she worked as a volunteer registering voters); R. 2883, 2917 (Plaintiff appealed denial of authorization for facial feminization surgery and prevailed); R. 2970 (Plaintiff noted as independent in activities of daily living); R. 2970 (in administering neuropsychological examination, Dr. Stanwood noted that Plaintiff's "ability to attend to simple verbal information . . . was in the superior range. . . . Overall the patient's ability to attend to tasks was sufficient across the various tests presented to her").  The ALJ's consideration of APRN Moscowitz's opinion was properly supported by and consistent with the record evidence.

I find that the ALJ did not err in his evaluation of the opinion evidence, which is the sole challenge the Plaintiff makes to her RFC.

**IV.   Conclusion**

For the reasons set forth above, the Plaintiff's motion to reverse the decision of the Commissioner, ECF No. 13, is DENIED and the Commissioner's motion to affirm the decision, ECF No. 20, is GRANTED.  The Clerk is directed to enter judgment for the Commissioner and to close this case.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:  September 29, 2022
       Hartford, Connecticut